IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WENDY LATRICE HUFF, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 2:17cv14-JFD |
| ) | [WO] |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

### **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is petitioner Wendy Latrice Huff's *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody. Doc. No. 1.[1]

### I.   INTRODUCTION

On March 5, 2015, Huff pled guilty to a felony information charging her with conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371, and aggravated identity theft, in violation of 18 U.S.C. § 1028A.[2] The plea agreement contained an appeal/post-conviction waiver with exceptions for claims of ineffective assistance of counsel and prosecutorial misconduct. Following a sentencing hearing on July 21, 2016, the district

---

[1] References to "Doc. No(s)." are to the document numbers of the pleadings, motions, and other materials in the court file, as compiled and designated on the docket sheet by the Clerk of Court. Unless otherwise noted, pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system, which may not correspond to pagination on the hard copy of the document presented for filing.

[2] Huff's convictions arose from her role in a tax-refund scheme involving the filing of hundreds of fraudulent tax returns using personal identification information that Huff stole from her employers (Alabama Title Loans, Inc. and Approved Cash Advance) and then provided to her coconspirator James Battle, who prepared and submitted false tax returns claiming a total $441,482 in fraudulent refunds.

court sentenced Huff to 48 months in prison, consisting of 24 months on the conspiracy count and 24 months on the identity theft count, with the terms to run consecutively. Huff took no appeal.

In January 2017 Huff filed this § 2255 motion asserting that her counsel was ineffective for failing to (1) explain to her the nature of the mail-fraud conspiracy charge to which she pled, (2) explain to her why she was sentenced based on the same loss amount as her coconspirator James Battle, (3) request a "minor role" reduction at sentencing, and (4) request a lower sentence where her coconspirator Battle received the same sentence she received. Doc. No. 1 at 4.

The government filed a response arguing that all of Huff's claims are without merit. Doc. No. 4. Huff filed a reply to the government's response. Doc. No. 8. After considering the parties' submissions, the record, and the applicable law, the court finds that Huff's § 2255 motion should be denied without an evidentiary hearing. Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*.

## II.   DISCUSSION

### A.   General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited. A prisoner may secure relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*,

198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

**B.     Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel is evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the required showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 1.     *Failure to Explain Mail-Fraud Conspiracy Charge*

In conclusory fashion, Huff claims that her counsel was ineffective for failing to explain to her the nature of the mail-fraud conspiracy charge to which she pled guilty. Doc. No. 1 at 4. By this claim, Huff appears to contend that her guilty plea was not entered knowingly and intelligently.

The two-part standard of *Strickland* applies to ineffective-assistance claims arising out of the guilty plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Where a petitioner challenges the validity of his guilty plea based on the alleged ineffective assistance of

4

counsel, the petitioner must establish that counsel's performance was deficient (i.e., was professionally unreasonable) and that counsel's deficient performance "affected the outcome of the plea process" (i.e., was prejudicial). *Id*. at 58–59. To establish prejudice in this context, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would … have pleaded [not] guilty and would … have insisted on going to trial."[3] *Id*. at 59.

> In an affidavit addressing Huff's claim, Huff's former counsel states:
>
> Ms. Huff was explained the factual basis for the charge of conspiracy to commit mail fraud on numerous occasions. I explained the basis for the mail fraud charge at the time she agreed to plea to the information; at the time she entered into the plea agreement; during the time we discussed the presentence report; and in preparation for sentencing. I am otherwise at a loss as to why Ms. Huff claims that I could not explain why she was charged with conspiracy to commit mail fraud.

Doc. No. 3 at 1.

At Huff's change of plea hearing, the magistrate judge who took Huff's plea asked her if she had reviewed and discussed the plea agreement with her lawyer and if she understood the plea agreement. Doc. No. 4-3 at 4–5. Under oath, Huff answered in the affirmative. *Id*. at 5. Huff also affirmed she had fully discussed the charges against her, and the case in general, with her counsel and that she was satisfied with her counsel's representation and advice. *Id*. at 3. Huff further affirmed that, other than the plea agreement, no one had made any promises or assurances to her to get her to plead guilty

---

[3] A mere allegation by a petitioner that he would have insisted on going to trial but for counsel's errors is insufficient to establish prejudice; rather, the court will look to the factual circumstances surrounding the plea to determine whether the petitioner would have proceeded to trial. *See Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001); *United States v. Arvantis*, 902 F.2d 489, 494 (7th Cir. 1990).

and that the written plea agreement represented the entirety of any understanding she had with the government. *Id*. at 5–6. The magistrate judge advised Huff of the statutory maximum sentence for the two counts she was pleading guilty to, and also explained that her mandatory two-year sentence for aggravated identity theft would run consecutively to the sentence for the conspiracy count. *Id*. at 6–7. Huff stated that she understood this. *Id*. at 7. Huff also affirmed to the court that she and her lawyer had discussed how the advisory sentencing guidelines would apply in her case.[4] *Id*. at 7–8. Huff was also informed of her right to a jury trial and her accompanying rights, and she affirmed that she was waiving those rights. *Id*. at 11–12. Huff acknowledged that she understood the charges against her, and after the magistrate judge explained to her the elements of the charged offenses, Huff stated that she understood those elements. *Id.* at 6 & 12. The court then had Huff testify to the factual basis for her plea through questioning by Huff's counsel. *Id.* 12–17. In setting forth the factual basis, Huff admitted that she agreed to provide her coconspirator Battle with stolen identities that Battle used to file false tax returns to obtain refunds and credit cards and prepaid debit cards that would be mailed to various locations, including Huff's residence. *Id.* Huff then admitted her guilt in open court. *Id*. at 18.

---

[4] In the written plea agreement, the Government agreed to recommend a sentence at the bottom of the applicable guidelines range and agreed to the appropriateness of a two-level reduction in Huff's offense level under U.S.S.G. § 3E1.1(a), for acceptance of responsibility, while also agreeing to recommend that Huff receive an additional one-level reduction under § 3E1.1(b) if she timely assisted authorities with information about her misconduct. Doc. No. 4-2 at 4. At sentencing, the district court granted the government's motion for a two-level downward departure for substantial assistance pursuant to U.S.S.G. § 5K1.1, resulting in Huff's receiving a below-the-guideline-range sentence on the conspiracy count of 24 months, where the calculated guideline range was 30 to 37 months.

"[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). "There is a strong presumption that the statements made during the [guilty plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Huff, who presents only the most cursory assertion regarding her counsel's failure to explain the mail-fraud conspiracy charge to her, fails to meet her burden to rebut her own sworn statements at the plea hearing that she understood the charges against her and the elements of the charged offenses, and that she had committed the acts forming the basis of those charges. Further, in her § 2255 motion, Huff does not say she would have insisted on going to trial had her counsel better explained the mail-fraud conspiracy charge, but instead appears to argue only that counsel should have obtained a lower sentence for her. *See* Doc. No. 1 at 4. Huff does not show how counsel's allegedly deficient performance in explaining the charges to her resulted in her receiving a sentence greater than the sentence she otherwise would have received. Thus, she demonstrates no prejudice. *See Hill*, 474 U.S. at 59. Huff is not entitled to § 2255 relief on this claim of ineffective assistance of counsel.

### 2. *Explanation of Loss Amount*

Huff claims that her counsel was ineffective for failing to explain to her why she was sentenced based on the same loss amount as her coconspirator James Battle. Doc. No. 1 at 4.

When pleading guilty, Huff admitted that she stole the personal identification information of hundreds of individuals from her employers and provided that information

7

to Battle so he could use it to file hundreds of fraudulent tax returns claiming a total of $441,482 in refunds. Doc. No. 4-3 at 14–15. Huff also admitted to these actions in the written plea agreement, where she admitted to the $441,482 loss amount. Doc. No. 9 at 3 & 7–9. Consistent with Huff's admissions, Huff's presentence investigation report ("PSI") found that the loss amount attributable to her was $441,482, which resulted in her receiving a 12-level specific offense characteristic enhancement under U.S.S.G. § 2B1.1(b)(1).[5] *See* U.S.S.G. § 2B1.1(b)(1)(G), (H) (providing for 12-level enhancement where loss is more than $250,000 but less than $550,000); Doc. No. 4-4 at 6, ¶ 16.[6]

A court may hold participants in a conspiracy responsible for the losses resulting from the reasonably foreseeable acts of coconspirators in furtherance of the conspiracy. *United States v. Mateos*, 623 F.3d 1350, 1370 (11th Cir. 2010). Here, Battle's use of the personal identification information provided to him by Huff to file fraudulent tax returns claiming a total of $441,482 was reasonably foreseeable to Huff, and the plea agreement plainly stated that Huff would receive a 12-level enhancement based on this loss amount. *See* Doc. No. 9 at 3. As noted above, Huff acknowledged that she understood the terms of the plea agreement in pleading guilty.

Huff fails to meet her burden to rebut her own sworn statements at the plea hearing that she understood the plea agreement setting forth the loss amount attributable to her.

---

[5] For guideline calculation purposes, loss is the greater of actual loss or intended loss and includes all relevant conduct. U.S.S.G. § 2B1.1, cmnt. n.3(A) & § 1B1.3(a).

[6] The PSI found that the IRS suffered a financial loss of $102,322 based on fraudulent refunds the IRS paid out as a result of the criminal conduct by Huff and her conspirator. Doc. No. 4-4 at 5, ¶ 8; *id.* at 14, ¶ 67. Huff was held jointly and severally liable with Battle for paying this amount of restitution to the IRS.

*See Medlock*, 12 F.3d at 187. Moreover, Huff makes no claim in her § 2255 motion that she would have insisted on going to trial had her counsel explained to her why she was sentenced based on the same loss amount as Battle. *See* Doc. No. 1 at 4. Therefore, she demonstrates no prejudice from counsel's allegedly deficient performance. *See Hill*, 474 U.S. at 59. Huff merely presents a hindsight argument that she considers it unfair that she was sentenced based on the same loss amount attributed to Battle, a loss amount she agreed to when pleading guilty and which was validated by her own admissions. Huff is entitled to no relief on this claim of ineffective assistance of counsel.

### 3. *Failure to Request "Minor Role" Reduction*

Huff claims that her counsel rendered ineffective assistance by failing to request a "minor role" reduction at sentencing. Doc. 1 at 4.

Section 3B1.2(b) of the Sentencing Guidelines provides that a defendant's offense level should be decreased by two levels "[i]f the defendant was a minor participant in any criminal activity." U.S.S.G. § 3B1.2(b). For purposes of § 3B1.2(b), a minor participant in the criminal activity is one who is less culpable than most other participants, but whose role could not be described as minimal. U.S.S.G. § 3B1.2, cmnt. n.5.

In determining whether to apply the role reduction, the sentencing court should consider the following non-exhaustive list of factors:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

9

(iii)     the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)     the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v)     the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2, cmnt. n.3(C).

In *United States v. Cruickshank*, 721 F. App'x 909 (11th Cir. 2018), the Eleventh Circuit stated:

> In [*United States v.] De Varon*, [175 F.3d 930 (11th Cir. 1999),] we established a two-part test to determine whether a defendant qualifies for a minor-role adjustment. *See id*. at 940. First, "the district court must measure the defendant's role against the relevant conduct for which [he] has been held accountable." *Id.* at 945. "When the relevant conduct attributed to a defendant [at sentencing] is identical to his actual conduct, he cannot prove that he is entitled to a minor-role adjustment simply by pointing to some broader scheme for which he was not held accountable." *United States v. Alvarez-Coria*, 447 F.3d 1340, 1343 (11th Cir. 2006). Second, "the district court may also measure the defendant's role against the other participants, to the extent that they are discernable, in [the] relevant conduct." *De Varon*, 175 F.3d at 945.
>
> To conduct this inquiry, we've held that "the conduct of participants in any larger criminal conspiracy is irrelevant." *De Varon*, 175 F.3d at 944. Rather, the district court should (1) look to "other participants only to the extent that they are identifiable or discernable from the evidence," and (2) "consider only those participants who were involved in the relevant conduct attributed to the defendant." *Id*. We've advised that "[a] defendant is not automatically entitled to a minor role adjustment merely because [he] was somewhat less culpable than the other discernable participants." *United States v. Bernal-Benitez*, 594 F.3d 1303, 1320–21 (11th Cir. 2010) (emphasis omitted). Additionally, we have warned that "[t]he fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that

10

> none [of the participants] are minor or minimal participants." *De Varon*, 175 F.3d at 944.

721 F. App'x at 911–12.

Huff must show by a preponderance of the evidence that she was a minor participant in the conspiracy. *See United States v. De Varon*, 175 F.3d 930, 939 (11th Cir. 1999). She points to no evidence to support such a conclusion. Instead, the evidence indicated she was an essential cog in the conspiracy who stole the personal identification information of hundreds of individuals and provided that information to her coconspirator Battle. She also had several prepaid debit cards with fraudulent refunds sent to her residence, and she cashed fraudulent tax refund checks. *See* Doc. No. 4-4 at 5, ¶ 8.

Huff fails to show that she was a minor participant in the conspiracy. Therefore, she cannot establish that her counsel was ineffective for failing to argue she should receive a "minor role" reduction.

### 4. *Imposition of "Same Sentence" as Coconspirator's*

Huff claims that her counsel was ineffective for failing to request a lower sentence where, she says, her coconspirator Battle received the same sentence she received. Doc. No. 1 at 4. This claim entitles Huff to no relief. Battle was sentenced several months after Huff. Therefore, Huff's counsel could make no comparison of their sentences at the time of Huff's sentencing. Moreover, Huff and Battle did not receive the same sentence. Huff was sentenced to 48 months' imprisonment. Battle was sentenced to 61 months' imprisonment. *See* Doc. No. 4-8. Huff's claim here has no basis in fact.

### 5. *Abuse-of-Trust Enhancement*

11

In her reply to the government's response to her § 2255 motion, Huff asserts that her counsel was ineffective for failing to argue that Application Note 2 to U.S.S.G. § 2B1.6 precluded imposition of a two-level sentence enhancement she received under U.S.S.G. § 3B1.3 for abusing a position of trust in the commission of her offense. Doc. No. 8 at 4–5.

Section § 3B1.3 of the Sentencing Guidelines provides in pertinent part:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic. If this adjustment is based upon an abuse of a position of trust, it may be employed in addition to an adjustment under §3B1.1 (Aggravating Role).

U.S.S.G. § 3B1.3. Huff's PSI, which was adopted by the district court, found that the § 3B1.3 abuse-of-trust enhancement applied to Huff because she "abused the authority of her position as a branch manager at Alabama Title Loans, Inc. and as a store manager at Approved Cash Advance to obtain and use without authority the means of identification of numerous customers." Doc. No. 4-4 at 7, ¶ 19.

Section 2B1.6 of the Sentencing Guidelines provides that the sentence for a defendant convicted of aggravated identity theft is the statutory term of imprisonment. U.S.S.G. § 2B1.6. Application Note 2 to § 2B1.6 elaborates:

> If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for the transfer, possession, or use of a means of identification when determining the sentence for the underlying offense. A sentence under this guideline accounts for this factor for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under [U.S.S.G.] § 1B1.3 (Relevant Conduct). "Means of identification" has the meaning given that term in 18 U.S.C. § 1028(d)(7).

U.S.S.G. § 2B1.6, cmnt. n.2. "Means of identification" is defined as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including … (A) name, social security number, [or] date of birth… ." 18 U.S.C. § 1028(d)(7)(A).

The Eleventh Circuit has held that Application Note 2 precludes the application of additional enhancements only if those enhancements pertain specifically to the "transfer, possession, or use of a means of identification." *See United States v. Cruz*, 713 F.3d 600, 607–08 (11th Cir. 2013) (affirming application of § 2B1.1(b)(10)(A)(i) use-of-device-making-equipment enhancements, which did not concern the use of a means of identification, to the base offense levels associated with § 1028A, since the plain language of Application Note 2 did not bar the application of all "relevant conduct" enhancements); *United States v. Charles,* 757 F.3d 1222, 1227 (11th Cir. 2014) (reversing the application of a § 2B1.1(b)(11)(B)(i) trafficking-of-an-unauthorized-access-device enhancement to a defendant also convicted under 18 U.S.C. § 1028A).

Application Note 2 to § 2B1.6 does not preclude imposition of a § 3B1.3 abuse-of-trust enhancement. First, this application note concerns only specific offense characteristic enhancements set out in § 2B1 of the Sentencing Guidelines. The § 3B1.3 abuse-of-trust enhancement is a "role enhancement" set out in § 3B1 of the guidelines. Thus, on its face, Application Note 2 to § 2B1.6 does not apply to enhancements under § 3B1.3. Huff's claim therefore has no merit. Moreover, the § 3B1.3 enhancement does not pertain specifically to the "transfer, possession, or use of a means of identification" and is instead

predicated only on the defendant's abuse of a position of trust.  *See, e.g., United States v. Davis*, 586 F. App'x 534, 539 (11th Cir. 2014); *United States v. Anderson*, 532 F. App'x 373, 378–79 (4th Cir. 2013).  Huff's counsel was not ineffective for failing to argue that Application Note 2 to § 2B1.6 precluded imposition of the § 3B1.3 abuse-of-trust enhancement.  Such an argument would have been meritless.[7]

### III.   CONCLUSION

For the reasons set out above, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Huff be DENIED and this case DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation or before April 16, 2019.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations under the provisions of 28 U.S.C. §

---

[7] Throughout her reply to the government's response to her § 2255 motion, Huff makes broad, unsubstantiated allegations that her plea agreement was "bogus" and "fraudulent" and that her counsel "did nothing in her behalf" in defending her case or "fighting for a better plea deal." *See* Doc. No. 8. These conclusory and unsubstantiated allegations entitle Huff to no relief.  Huff also alleges in her reply that her counsel failed to provide her with discovery materials until approximately a week before her sentencing. Doc. No. 8 at 2.  She makes no showing how any matters contained in the discovery could have influenced her decision to plead guilty or, if known by her, might have resulted in her receiving a shorter sentence. *See, e.g., United States v. Stewart*, 2011 WL 382206, at *2 (E.D. Ky. 2011) ("Stewart does not explain in any detail which specific facts would have influenced his decision to plead guilty or why he would not have pleaded guilty if he had known those facts. Without identifying what information he did not have at the time he entered the plea and how that information would have impacted his decision to plead guilty, the Court cannot find that there is a reasonable probability Stewart would not have pleaded guilty but for his attorney's alleged errors.  *Hill [v. Lockhart]*, 474 U.S. [52,] at 59 [(1985)].").

636(b)(1) will bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

    Done, on this the 2nd day of April, 2019.

                                            /s/ Susan Russ Walker
                                            Susan Russ Walker
                                            United States Magistrate Judge